Filed 10/14/25  P. v. Delgado CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LEO DELGADO,<br><br>    Defendant and Appellant. | G064215<br><br>(Super. Ct. No. 22CF1714)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael A. Leversen, Judge. Affirmed and remanded with directions.

James M. Kehoe, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Randall D. Einhorn and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

In April 2024, a jury convicted defendant Leo Delgado of grand theft and money laundering in connection with a project to build container homes in Belize.[1] He was sentenced to seven years in prison, including a one-year enhancement under Penal Code section 186.11, subdivision (a)(3), which provides for an "aggravated white collar crime enhancement."[2]

Delgado appeals only his sentence, arguing the trial court should have stricken or dismissed the white collar crime enhancement. He also argues additional fines and assessments listed in the abstract of judgment should be stricken because the court did not announce them in its oral pronouncement of the sentence.

We affirm the judgment as to the white collar crime enhancement. We remand the matter on a limited basis, however, so the trial court may calculate and impose the correct amount of any mandatory fees and assessments.

STATEMENT OF FACTS

Delgado has experience in construction and project management, particularly in prefabricated buildings, and owns a company located in Orange County. Sanctuary Belize, also called the "Reserve," was a community being built in Belize. Representatives of the Reserve contacted Delgado in 2016 about getting involved in building prefabricated homes for the project.

---

[1] Container homes are prefabricated homes manufactured from shipping containers.

[2] All further undesignated statutory references are to the Penal Code. For the sake of brevity, we will refer to the enhancement as the white collar crime enhancement.

The Reserve representatives later gave Delgado's name and contact information to a Garden Grove couple (Victims 1 and 2), who had purchased a property in the Reserve in late 2016 and desired to build a home on it. Victims 1 and 2 paid Delgado approximately $153,000 by June 2018, but very little progress, if any, was made on the construction. When Victims 1 and 2 confronted Delgado about the lack of progress, he told them the project would cost $1.6 million. Delgado was unable to account for the $153,000 they had already paid to him.

Another victim, a Canadian resident, learned about Delgado's container home business in April 2017. She and her husband (Victims 3 and 4) were seeking to build a small home in Belize and hired Delgado to build it for a budget between $190,000 to $200,000.[3] Delgado told them he could build the home they wanted with minor landscaping for $190,000.

The home originally was scheduled to begin construction in the fall of 2017, but according to Victim 3, Delgado kept changing the completion date. As of May 15, 2019, Victim 3 had paid Delgado approximately $85,000 with no completion in sight. When Victim 3 confronted Delgado via e-mail, Delgado sent her a bill that increased the price of the construction from $190,000 to $1.4 million. When Victims 3 and 4 asked Delgado to refund their money, he stated the money had already been spent on a "manufacturing plan" the couple never actually saw. When they contacted the Belizean government, they were told no building permits had been issued under their names. They filed a complaint with the district attorney's office.

---

[3] According to Victim 3, this was equivalent to about $250,000 in Canadian dollars at the time.

Another victim (Victim 5) was a retiree living on Social Security income in St. Louis when she was told by sales representatives from the Reserve about Delgado's homebuilding project. She had purchased a lot in the Reserve in 2017. Victim 5 told Delgado her budget to build a home on the lot was around $250,000. She paid him close to $167,000 to build her home, but the only work done on her property in nearly two years was the installation of a septic tank and the construction of an outhouse.

Four months before the construction of the house, Delgado suddenly raised the price of Victim 5's home to between $750,000 to $800,000. She could not get in contact with Delgado and could not get a refund of her money. She ended up having to sell her property. Up to the time of trial, Victim 5 was residing in Belize, but in rented accommodations. She also filed a complaint with the district attorney's office.

PROCEDURAL HISTORY

In July 2022, a felony complaint was filed against Delgado, alleging nine counts: (1) grand theft of $162,704 from Victim 5 (§ 487, subd. (a)); (2) grand theft of $82,814 from Victims 3 and 4 (§ 487, subd. (a)); (3) grand theft of $154,200 from the Victims 1 and 2 (§ 487, subd. (a)); and (4)–(9) money laundering (§ 186.10, subd. (a)). The complaint further alleged Delgado committed a theft exceeding $100,000 (§ 1203.045, subd. (a)) and charged the white collar crime enhancement in connection with all counts. Total restitution claimed in the felony complaint was $399,718.85. In April 2024, a jury convicted Delgado on all nine counts and found all enhancement allegations to be true.

The People filed a brief advocating for the maximum sentence of eight years four months, including a one-year white collar crime enhancement. Delgado's attorney submitted a brief indicating his maximum

4

exposure was to a term of ten years four months, with a two-year white collar crime enhancement. The attorney sought the minimum term, arguing Delgado was 61 years old and unlikely to reoffend.

On May 17, 2024, the trial court sentenced Delgado to seven years in prison, including one year for the white collar crime enhancement.

## DISCUSSION

### I.

#### ISSUES AND APPLICABLE STANDARD OF REVIEW

Delgado raises two issues on appeal. First, he argues the trial court should not have imposed the white collar crime enhancement and should have exercised its discretion to strike it under section 1385, subdivision (c). "We review a trial court's order denying a motion to dismiss a sentence enhancement under section 1385 for abuse of discretion. [Citations.] A trial court may abuse its discretion where 'its decision is so irrational or arbitrary that no reasonable person could agree with it,' 'where the trial court was not "aware of its discretion"' to dismiss a sentencing allegation under section 1385, or 'where the court considered impermissible factors in declining to dismiss.'" (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490.)

Second, Delgado argues the abstract of judgment lists two assessments not orally imposed by the trial court at sentencing: a $360 court operations assessment under Penal Code section 1465.8, and a $270 conviction assessment under Government Code section 70373. He contends both assessments are unauthorized and must be stricken. Because the imposition of these assessments is governed by statute, we review the issue de novo.

5

## II.

### THE TRIAL COURT ACTED WITHIN ITS DISCRETION BY ADDING A ONE-YEAR WHITE COLLAR CRIME ENHANCEMENT TO DELGADO'S SENTENCE

The crux of Delgado's argument is that the trial court failed to exercise its statutory discretion under section 1385, subdivision (c) to dismiss the white collar crime enhancement in the furtherance of justice. Under section 1385, subdivision (c)(2), the court is to "consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances" listed in subdivision (c) exist, and "[p]roof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (*Ibid*.) Among the mitigating circumstances in the statute is "[t]he current offense is not a violent felony as defined in subdivision (c) of [s]ection 667.5." (*Id.* at subd. (c)(2)(F).) Because Delgado's crimes are financial and not violent, he argues the court should have dismissed the enhancement unless it believed dismissing it would endanger public safety. Because the court made no such finding, Delgado contends imposition of the enhancement was an abuse of discretion.

### A. Forfeiture

The Attorney General argues Delgado failed to preserve this issue for review because he did not raise it in his sentencing brief or at the hearing. Admittedly, we find it counterintuitive for Delgado to argue the trial court abused its discretion under section 1385, subdivision (c) if the court was never asked to exercise it in the first place. Delgado also argues that, if the issue has been forfeited, his counsel was ineffective in failing to raise it. In light of Delgado's ineffective assistance of counsel claim, we decline to find

forfeiture and elect to address the merits of the argument. (*People v. Monroe* (2022) 85 Cal.App.5th 393, 400.)

## B. The Trial Court's Discretion under Section 1385

"Construed as a whole, [section 1385] makes clear that all the mitigating circumstances listed in subdivision (c)(2) merely guide the court's discretion in determining whether a dismissal is in furtherance of justice. Subdivision (c)(1) [begins by setting] forth the controlling 'furtherance of justice' standard for dismissal. Subdivision (c)(2) then states the court must give great weight to the presence of any one or more of the nine listed mitigating circumstances '[i]n exercising its discretion' whether to dismiss. Subdivision (c)(3) confirms the discretionary nature of this decision by stating that the court 'may exercise its discretion at sentencing' but is not prevented 'from exercising its discretion' earlier in the proceedings." (*People v. Mazur* (2023) 97 Cal.App.5th 438, 445.) "By its terms, the 'endanger public safety' language pertains only to the *weight* a trial court must give to the mitigating circumstances. Subdivision (c)(2) states that, absent a finding that dismissal 'would endanger public safety,' the presence of *any* 'one or more' of the listed mitigating circumstances 'weighs greatly' in favor of dismissal. (§ 1385, subd. (c)(2).) Conversely, if the court finds dismissal *would* endanger public safety, then it need *not* give great weight to the presence of any mitigating circumstance. In either case, however, the court must apply the controlling 'furtherance of justice' standard. (§ 1385, subd. (c)(1).)" (*Ibid.*) "[T]he controlling 'furtherance of justice' standard is broader and allows the court to consider factors beyond public safety in exercising its discretion whether to dismiss an enhancement, including the nature and circumstances of the crimes and the defendant's background, character, and prospects." (*Id.* at p. 446.)

7

"Stated simply, if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in furtherance of justice. This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.'" (*People v. Walker* (2024) 16 Cal.5th 1024, 1036.)

The trial court's statements at the sentencing hearing make clear it believed such countervailing factors were present and dismissal of the enhancement would not be in the furtherance of justice. The trial court made the following pronouncement: "Some of the things I considered are the vulnerability of the victims, the emotional injury inflicted by the defendant, the degree of monetary loss, the fact that the defendant was an active participant in the fraud of all of these people, the manner in which the crime was carried out demonstrates criminal sophistication and professionalism. [¶] He bilked these people over a long period of time and bilked many people out of their life savings. He took advantage of a position of trust and confidence in doing so. [¶] . . . I find it horrible that the defendant could lie to these people, take their life savings, ruin their dreams, shatter the plans for their friends and relatives to visit, for their daughters to come out and get married, take trips to China, not get a separate bank account to put the funds in, keep asking these people for more funds . . . not tell them that it was going to cost them all more money." The court compared Delgado's crime to simpler robberies or burglaries involving defendants with prior convictions, saying

"we give those people four years in state prison if they have had prior incidents—not usually right off the bat. But this was crimes that spanned over a number of years. [¶] And if we give people those kind of sentences, why should we give somebody that basically screwed these people out of their life savings of $400,000—and one of these victims is now living [on] Social Security at $146 a month—why should we take it easy on these people? [¶] I don't think we should. It's never been my philosophy to do that, so I don't plan on doing that . . . . "

The trial court found Delgado's crimes to be extremely serious and worthy of a sentence in the upper range of the available sentence, even though it was not a violent felony. Even if Delgado had asked the court to exercise its discretion to strike the white collar crime enhancement, we are confident it would have declined to do so. We find no abuse of discretion.

III.

THE TRIAL COURT MUST CALCULATE AND IMPOSE MANDATORY STATUTORY<br>ASSESSMENTS ON REMAND

The assessments under Government Code section 70373 and Penal Code section 1465.8 are mandatory. (See *People v. Woods* (2010) 191 Cal.App.4th 269, 272.) "Government Code section 70373, subdivision (a)(1), which provides for imposition of the court facilities assessment, states in part: 'To ensure and maintain adequate funding for court facilities, an assessment shall be imposed on every conviction for a criminal offense . . . . The assessment shall be imposed in the amount of thirty dollars ($30) for each misdemeanor or felony.'" (*Ibid*.) "Penal Code section 1465.8, former subdivision (a)(1), which provided for the court security fee, stated, 'To ensure and maintain adequate funding for court security, a fee of thirty dollars ($30) shall be imposed on every conviction for a criminal offense. . . .'" (*Ibid*.)

9

In its oral pronouncement of sentence, the trial court did not address either the court facilities assessment or the court security assessment. Nevertheless, the abstract of judgment reflects a $360 assessment under Penal Code section 1465.8 and a $270 assessment under Government Code section 70373. Setting aside whether the monetary amounts shown on the abstract are consistent with Delgado's convictions, the abstract cannot add a fine or fee that was not imposed by the court at the time of sentencing. (*People v. El* (2021) 65 Cal.App.5th 963, 967 ["'The clerk cannot supplement the judgment the court actually pronounced by adding a provision to the minute order and the abstract of judgment'"].) We therefore strike both assessments from the minutes and abstract and remand to the trial court to address the two statutory assessments and modify the abstract as necessary.

## DISPOSITION

The judgment is affirmed, but the matter is remanded to the trial court to address the assessments provided for in Penal Code section 1465.8 and Government Code section 70373 and modify the abstract of judgment as necessary.


GOODING, J.

WE CONCUR:


MOTOIKE, ACTING P.J.


MOORE, J.

10